**In the Matter of Barbara Jean NAUGHTON, Debtor.**

**Carl F. SAPP, Plaintiff,**

**v.**

**Barbara Jean NAUGHTON, Defendant.**

**Bankruptcy No. 83–00208–C–3.
Adv. No. 84–0212–C–3.**

United States Bankruptcy Court,
W.D. Missouri, C.D.

Oct. 5, 1984.

---

Carl F. Sapp, Sapp, Woods, Orr & Bley, Columbia, Mo., for plaintiff.

Jerry W. Venters, Bartlett, Venters, Pletz & Toppins, P.C., Jefferson City, Mo., for defendant.

## ORDER DIRECTING THE PARTIES TO SHOW CAUSE IN WRITING WHY TRIAL AND DETERMINATION OF THE ISSUES SHOULD NOT BE REMITTED TO A STATE COURT OF COMPETENT JURISDICTION

DENNIS J. STEWART, Bankruptcy Judge.

This is an action in which the plaintiff seeks a judgment for some $60,000.00 which he allegedly loaned to the defendant and a declaration that the same liability is one nondischargeable in bankruptcy as having been created by fraud within the meaning of section 523(a)(6) of the Bankruptcy Code. As part of the relief requested in the complaint, plaintiff requests leave to proceed against the defendant in an appropriate state court. In the prayer of the complaint, the plaintiff requests that he "be allowed to proceed against the Debtor under the civil law of Missouri ..."

It has always been considered, even before the current jurisdictional miasma which surrounds the bankruptcy court, that the bankruptcy court might well, in its discretion, permit a case within its jurisdiction to be tried and determined in a state court. "A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy courts to consent to submission to State courts of particular controversies involving ... questions of State ... law and arising in the course of bankruptcy administration." *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940). "(T)here is a limited discretion available to a bankruptcy court to require matters to be litigated in state courts even where jurisdiction exists in the bankruptcy court." *In re Axton,* 641 F.2d 1262, 1273 (9th Cir.1981). Even when the action is a nondischargeability action conceived to be exclusively determinable by the bankruptcy court, it has been held that, if the same issues have, as a matter of fact, been previously tried and determined in a state court, they bind the bankruptcy court's subsequent determination under principles of collateral estoppel. "If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of section (523), then collateral estoppel, in the absence of a countervailing statutory policy would bar litigation of those issues in the bankruptcy court." *Brown v. Felsen,* 442 U.S. 127, 139, n. 10, 99 S.Ct. 2205, 2213, n. 10, 60 L.Ed.2d 767 (1979). Or the bankruptcy court may determine the dischargeability issue on the basis of the state court record made on the issue of liability. *In re Mountjoy,* 368 F.Supp. 1087, 1096 (W.D.Mo.1973) ("Upon a judgment on the claim in the state court, the bankruptcy court can review the record, hear additional evidence if offered or desired, and then make a determination on the crucial issue of dischargeability.")

These procedures appear to be particularly employable under the current jurisdictional morass and in the action at bar. To begin with, the Administrative Office of the United States Courts has contended that the currently sitting bankruptcy judges have no tenure from and after June 28, 1984; that the extension of their tenure purporting to have been made by the Bankruptcy Amendments and Federal Judgeship Act of 1984 is unlawful; and that orders and judgments made by the sitting bankruptcy judges are void.[1]

This not inconsiderable issue concerning the power of the sitting bankruptcy judges is compounded by lingering questions concerning the constitutionality of the statute which confers jurisdiction of dischargeability determinations to the bankruptcy court. See section 157(b)(2)(I), Title 28, United States Code. The determination of dischargeability by a non-Article III bankruptcy court was previously held by this court not to offend Article III of the Constitution when the power to hear and determine the action was conferred, not by statute, but rather by concepts of the inherent and non-statutory jurisdiction over all matters of administration and distribution of a bankruptcy estate. See *Matter of Brown*, 26 B.R. 119 (Bkrtcy.W.D.Mo.1983). But when jurisdiction is conferred by statute to determine "private" controversies of nearly any character, the rule of the plurality opinion in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct.

2858, 73 L.Ed.2d 598 (1982), is that the Article III judicial power of the United States is brought into focus and engaged. Accordingly, it was held in that case that "(s)uch a grant of jurisdiction cannot be sustained as an exercise of Congress' *power* to create adjuncts to Art. III courts." 458 U.S. at 87, 102 S.Ct. at 2880 (Emphasis added.). And it has been said that "where the invalidity of an act or a portion thereof goes to the *power* of the legislature to enact the law, and not merely to the form of the enactment, no rights or correlative obligations may arise under such an invalid statute." 16 Am.Jur.2d Constitutional Law, section 257, p. 728 (1979) (Emphasis added.). Thus, if it is eventually determined by the federal courts that the jurisdictional statute is unconstitutional, the result may be the voiding of judgments issued thereunder.

Some cases decided in the wake of the ruling in *Marathon, supra,* have stripped the holding to an "effective" one which is only that actions arising under state law and which, absent bankruptcy, would be triable in state courts are forbidden to be tried and determined by bankruptcy judges bereft of Article III status. See, e.g., *Kalaris v. Donovan*, 697 F.2d 376, 386 (D.C. Cir.1983), interpreting that *Marathon, supra,* "effectively held that certain private *state* law claims, when adjudicated within the federal system, must be decided by Article III courts."[2] (Emphasis in origi-

**1.** See the letter of William E. Foley, Director of the Administrative Office of the United States Courts to Senator Strom Thurmond, dated July 11, 1984, containing the following language: "In its efforts to address the jurisdictional problem arising in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 [102 S.Ct. 2858, 73 L.Ed.2d 598] (1982), Congress consistently provided for a brief transitional period during which bankruptcy judges would continue to serve until appointments to a new system could be made. However, the terms of office of all bankruptcy judges expired—by operation of law—at midnight, June 27. Section 121 of the new law attempts to correct the situation by retroactively extending the terms of these individuals. Since these individuals were not in office on the date of enactment, section 121 may easily be viewed as an attempt by Congress to make appointments to bankruptcy judge-

ships—a power Congress clearly does not have under the appointments clause of the Constitution.

"Only a court decision can finally resolve whether section 121 is or is not constitutional. Absent remedial legislation bankruptcy litigants will face grave uncertainty as to the authority of any bankruptcy judge purporting to act under section 121 until a final court decision is handed down. That situation is simply not fair to these litigants."

**2.** The plurality opinion in the *Marathon* case appeared to go further, holding that the federal judicial power includes all "private" controversies, excluding only adjudications of public rights (with respect to which the presence of the United States as a party is a necessary precondition); that there are only three exceptions to the

nal.) Even if the *Marathon* holding is so restricted, however, at least part of the determination which a bankruptcy court must make in the process of adjudicating dischargeability *vel non* is a matter arising under state law. That is the issue of the existence or nonexistence of the underlying debt, which is necessarily an issue arising under state law. "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *Vanston Bondholders Protect. Com. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946). And see also 1A Collier on Bankruptcy section 17.28A, p. 1742.6 (1976), in which it is noted that "the suit would be in the state court *on the debt*" (emphasis in original), but that, ordinarily, in bankruptcy proceedings to determine dischargeability and with respect to invoking a right to jury trial, "(t)he matter of the debt is somewhat extraneous, albeit important, and may be considered incidental to the main issue." But, in the light of the *Marathon* decision, *supra*, can the determination of the existence of the debt be considered incidental to the main issue for the purpose of determining when the federal judicial power is engaged? In view of

recent holdings which intimate that the federal judicial power may never be exercised by any judicial officers except Article III judges, see cases and authorities cited in *Matter of Bluford*, 40 B.R. 640, 642, n. 2 (Bkrtcy.W.D.Mo.1984), it would seem unlikely. And further, the question remains as to whether the "effective" holding of *Marathon, supra,* may permissibly be circumvented by simply recasting state law actions in the form of federal bankruptcy actions, as the dischargeability statutes appear to do with respect to common law fraud.[3]

▬▬ These unanswered questions have made it appear to the bankruptcy court, which, like other federal courts is charged with the duty of initially inquiring into its own jurisdiction, even if no party raises the issue,[4] that it might be in the interest of justice and of the parties to remit the action at bar to trial in a state court in accordance with the foregoing authorities. This is particularly so in view of the large stakes involved in this action.

Accordingly, it is hereby

ORDERED that the parties show cause in writing, if any cause they have, within 15 days of the date of entry of this order why trial and determination of the issues in

---

rule that the federal judicial power must be exercised by Article III judges—courts martial, admiralty courts and legislative courts—none of which the bankruptcy courts fall into; and that it is a violation of these constitutional principles if the bankruptcy courts, with respect to actions which involve the federal judicial power, "issue final judgments which are binding and enforceable even in the absence of an appeal." 102 S.Ct. at 2879. Cf. *Kalaris v. Donovan*, 697 F.2d 376, 387 (D.C.Cir.1983), where it is noted that "the plurality opinion ... would have gone farther than the Court's effective holding" but that it nevertheless "approved the initial determination of 'private rights' by non-Article III judges so long as the 'essential attributes of the judicial power' were reserved in Article III courts." From the foregoing considerations, it appears that the entry of judgment by the bankruptcy court in an action such as that at bar might not preserve the "essential attributes of the judicial power" to the Article III district court.

**3.** If so, this would seem to be one way to subvert the doctrine of the *Marathon* decision which would protect against "the device of 'spe-

cialized' legislative courts" to dilute the Article III power. For, if this adsorption of state law into federal law can have no limitation, Congress has it within its power to effectively abolish the Article III power. "The flaw in appellants' analysis is that it provides no limiting principle. It ... threatens to supplant completely our system of adjudication in independent Art. III tribunals and replace it with a system of 'specialized' legislative courts." 102 S.Ct. at 2872.

**4.** "Supreme Court decisions have now made it clear that the bankruptcy court has the power in the first instance to determine whether it has jurisdiction to proceed. Moreover, any determination concerning its own jurisdiction is *res judicata* in a subsequent collateral proceeding. These principles apply even if the question of jurisdiction was not raised; and they apply to the orders of the referee as well as to those of the judge." 1 Collier on Bankruptcy, para. 2.05, pp. 150, 151 (1978).

this action should not be remitted to a state court of competent jurisdiction.