**In the Matter of Edgar Lewis SCHWANINGER, Debtor.**

**George HERETH, Plaintiff,**

v.

**Edgar Lewis SCHWANINGER, Defendant.**

**Bankruptcy No. 84–03857–SJ. Adv. A. No. 85–0102–SJ.**

United States Bankruptcy Court, W.D. Missouri, St. Joseph Division.

Dec. 3, 1985.

———

Alden S. Lance, Savannah, Mo., for debtor/defendant.

John Manring, St. Joseph, Mo., for plaintiff.

Arthur B. Federman, Kansas City, Mo., trustee.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE AND JUDGMENT DENYING PLAINTIFF'S COMPLAINT FOR A DECREE OF NONDISCHARGEABILITY

DENNIS J. STEWART, Bankruptcy Judge

The plaintiff seeks a decree of nondischargeability on the basis of his allegation that a liability of the defendant to him was created by fraud within the meaning of § 523(a)(2) of the Bankruptcy Code. The issues joined by the pleadings came on before the court for hearing on September 13, 1985, sitting in St. Joseph, Missouri. The plaintiff then appeared personally and by counsel, Mark G. Stingley, Esquire, and the defendant also appeared by counsel, Alden S. Lance, Esquire.

The evidence which was then adduced demonstrated the following materials facts: The defendant entered into a contract on December 22, 1978, to convey to plaintiff a tract of 10.31 acres which is more particularly described in the marginal note.[1] The transfer of the property was to take place for the payment of the total sum of $4,000 by the plaintiff to defendant. One hundred dollars was paid at the time of execution of the contract of December 22, 1978, with $900 to be paid at the time of closing and $3,000 one year from the date of closing.

Under the terms of the contract thus executed, the defendant and his wife undertook to:

"execute a warranty deed conveying Sellers' interest in the real estate to the Buyer, *free of all liens and encumbrances, except easements and restrictions of record, if any,* and to deliver said Deed to the Escrow Agent and to direct said Escrow agent to deliver said Warranty Deed to Buyer upon performance of the terms of this agreement by the Buyer." (Emphasis added.)

The parties to the contract of December 22, 1978, further acknowledged that there was a "First Mortgage Lien" in existence to the Federal Land Bank. The debtor and his wife agreed that:

"At the time the Warranty Deed from Sellers to Buyer hereunder is delivered to Buyer, Sellers will obtain a partial release of mortgage from Federal Land Bank for the property being conveyed by said Warranty Deed."

On October 8, 1979, the plaintiff claims, and the court assumes for the purpose of this decision, that he had completed payment of the $1,000 to defendant which was to trigger the issuance of the warranty deed. Accordingly, on that date the defendant issued a warranty deed to plaintiff.

The plaintiff complains that the defendant, in order to induce him to close on the contract, and accordingly to make the $900 payment which was prerequisite to closing, falsely represented to him that he had obtained the release of the 10.31 acres from the lien of the Federal Land Bank. The closing was accomplished on October 8, 1979. The evidence is controverted as to whether plaintiff actually paid the $900 at or before the time of closing. The plaintiff testified that he in fact made the payment on the date of closing. His testimony is corroborated by that of the defendant's former wife, who purports to have wit-

---

1. The subject property was described as follows in the "agreement for the sale of real estate" executed by the parties on December 22, 1978:

"Part of the SW ¼ of Section 31, Township 8 North, Range 8 East of the 6th P.M., Lancaster County, Nebraska ..."

nessed the payment. The defendant, however, denies that payment was ever made and further states that his former wife was not living with him on the date when the $900 payment purports to have been made.[2] The plaintiff has submitted no documentary evidence of payment, nor has he attempted any explanation of the absence of such documentary evidence.[3] The defendant nevertheless went through with the closing and executed a warranty deed dated October 8, 1979, to the plaintiff. Months after the closing, the defendant issued another, corrected warranty deed to the plaintiff in order to correct an error in the description of the property intended to be transferred.[4] Both warranty deeds, by their terms, warranted defendant's title to the 10.31 acres, except for easements and "other restrictions of record." Some 7 months prior to the closing, after the defendant had negotiated with the Federal Land Bank to release its deed of trust with respect to the 10.31 acres to be conveyed to the plaintiff, the defendant received the following letter of March 7, 1979, from Ron Monson, vice-president of the Federal Land Bank Association:

"In addition to the letter dated March 2, 1979, concerning additional partial releases:

"It is understood that an additional 10.31 acres of the security has been sold on contract. We *are agreeing* to release this 10.31 acres when the terms of the contract come due for an amount to be determined at that time. However, no additional releases will be issued as explained in FLBA letter of March 2, 1979 ..." (Emphasis added.)

In depositions which have been submitted to this court by agreement between the parties, evidence has been presented to the effect that it would be difficult to ascertain the disposition of any check which plaintiff may have given the defendant on October 8, 1979, to close the contract for purchase and sale.[5] There is no evidence that the release adverted to in the letter of March 7, 1979, was ever recorded, but there is no evidence that the defendant knew of the non-recordation.[6] There is no competent evidence that, at the time the initial warranty deed was executed, the defendant knew or should have known that the agreement of the Federal Land Bank to release the 10.31 acres was not going to be honored.[7]

Nevertheless, the Federal Land Bank not only did not grant any release of the 10.31 acres, but, furthermore, joined another prior lienholder, the Martell State Bank, in

---

**2.** As is observed below in the text of this memorandum, the defense of nonpayment is one which goes to the underlying claim of liability *vel non*—a claim which arises exclusively under state law and therefore cannot be determined by the bankruptcy court under the rule of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

**3.** But see note 18, *infra*.

**4.** The generalized description was still the same as in the contract of December 22, 1978, see note 1, *supra*, but the metes and bounds description was corrected.

**5.** "Any time a purchase is made and there is an earnest deposit, that goes into our trust [department], as far as monies paying in to closing out ... [and I have no] idea of why the realty firm's Trust Department never paid the Federal Land Bank the agreed sum of money to get them to file a release deed ..." Deposition of the real estate agent who handled the transaction, Henry W. Hart, September 3, 1985, p. 19. According

to the deposition testimony of the president of the Federal Land Bank, it never received any payment for the 10.31 acres. See page 26 of the deposition of Burdette E. Swanson of June 20, 1985. But there is no evidence which tends to show that the payment was never received by the trust department of the realty company. Nor, if it was not, whether plaintiff or defendant was responsible for the nonreceipt.

**6.** But the plaintiff, in any contest over the property between him and the deed of trust holder, would be chargeable with constructive knowledge of the non-recordation of the lease.

**7.** Even if the defendant knew of the non-recordation, the letter of March 7, 1979, from an authorized officer of the Federal Land Bank "agreeing" to release the mortgage, had not been contradicted—according to the evidence adduced to this court. This alone keeps the misrepresentation from being a "knowing" or fraudulent one, insofar as the evidence presented to the court is concerned.

foreclosing on the 10.31 acres.[8] The foreclosure sale was held on December 22, 1981. The plaintiff purchased the 10.31 acres at the foreclosure sale, expending the sum of $4,900 to do so. He complains that he also "incurred an additional $400.00 in attorney's fees in defense of the mortgage foreclosure." Accordingly, he requests a nondischargeable judgment in the sum of $9,300.[9]

### Conclusions of Law

It is the plaintiff's contention that the indebtedness to him as to which he seeks a decree of nondischargeability is one created by fraud or false pretenses within the meaning of § 523(a)(2) of the Bankruptcy Code. As this court has pointed out on many prior occasions, in order to be entitled to a decree of nondischargeability under that subsection, a plaintiff must demonstrate by clear and convincing evidence [10] that the indebtedness has been caused by a knowing and deliberate misrepresentation of the debtor reasonably relied upon by the plaintiff.[11] In this action, however, the above-recited facts fall signally short of showing that the crucial misrepresentation—that release of the mortgage of the Federal Land Bank had been achieved as of October 8, 1979, when in fact it had not—

was either deliberate or knowing. According to the above facts, the status of the relevant facts as of that date was such that the defendant may have in good faith believed that the Federal Land Bank had released its mortgage on the 10.31 acres. He had received a letter from a representative of that Bank saying that the bank was "agreeing" to release the mortgage upon appropriate payment. The plaintiff, in his post-trial brief, points to some other facts which he contends have a tendency to show that the defendant should have known of the falsity of this representation.[12] But these facts are not sufficient to demonstrate fraud, in the face of the letter of March 7, 1979, by clear and convincing evidence. An inference of non-fraudulent conduct is as reasonably drawn from the facts which have been presented to the court as is an inference of fraud. Under such circumstances, the authorities hold that clear and convincing evidence of fraud should not be found.[13]

The plaintiff contends that, if the representation of October 8, 1979, that the mortgage of the Federal Land Bank had been released was not fraudulent, the issuance of the corrected deed on April 7, 1980, seven months later, with full knowledge of the fact that the mortgage had not been

**8.** Martell State Bank started the foreclosure action and was joined in the project by the Federal Land Bank.

**9.** It is not crystal clear either from the pleadings and the evidence in this case precisely what the components of this damage request are. Apparently, the entire purchase price to have paid to defendant—$4,000—is requested, plus the $4,900 paid at the foreclosure sale for the 10.31 acres, plus $400 attorney's fees.

**10.** See *Matter of Curl,* 49 B.R. 302, 304, n. 6 (Bkrtcy.W.D.Mo.1985).

**11.** *In re Taylor,* 514 F.2d 1370, 1373 (9th Cir. 1975); *Sweet v. Ritter Finance Company,* 263 F.Supp. 540, 543 (W.D.Va.1967).

**12.** It is pointed out that, between the execution of the contract for sale on December 22, 1978, and the closing thereon on October 8, 1979, the defendant gave a deed of trust to the Martell

State Bank on July 6, 1979. But no affirmative misrepresentation by the defendant is alleged in this regard, or can be. In issuing his warranty deeds to plaintiff with respect to the 10.31 acres, the defendant explicitly excepted "restrictions of record." A "restriction" is generally defined to be a limitation on title which has been filed for record. "The restrictions of record are those required to be recorded in order to serve as notice to bona fide purchasers." *University Hills, Inc. v. Patton,* 427 F.2d 1094, 1100 (6th Cir.1970). There is no statement or showing that the deed of trust given to the Martell State Bank was not recorded as of October 8, 1979.

**13.** "If the facts are susceptible of a natural and probable explanation which is compatible with the good faith and honesty of the parties, fraud is not established." *In re Las Colinas, Inc.,* 294 F.Supp. 582, 599 (D.P.R.1968). If it is equally reasonable to infer from the evidence that no fraud was committed as it is to draw an inference of fraud, then clear and convincing evidence of fraud has not been shown.

released, was fraudulent.[14] As likely as this proposition may seem, however, the evidence in this case does not demonstrate that the defendant's knowledge was any greater on April 7, 1980, than it was on October 8, 1979. Insofar as the evidence which was submitted on this issue shows, the defendant's knowledge on April 7, 1980, was not in any particular greater respecting the fact of release or non-release than it had been on October 8, 1979.[15] Accordingly, it must, according to the foregoing principles, be concluded that fraud has not been shown on this occasion, either. The plaintiff contends, in his posttrial brief, that there were two other misrepresentations which led to the damages which are sought in the action at bar. But these alleged misrepresentations were not such that they induced any detrimental reliance by the plaintiff.[16]

The principal defense raised by the defendant in his posttrial brief is that the $900 payment necessary to close the contract for purchase and sale of the 10.31 acres was never made. If this defense were found to be meritorious, no liability under the terms of the governing contract, could come into effect on the payment of this $900. On the basis of the evidence presented to this court, this defense seems to be meritorious for the simple reason that the plaintiff has not presented any documentary evidence in support of his controverted testimonial claim of payment which otherwise is not credible.[17] But this court cannot make this otherwise meritorious ground a separate and independent basis for not granting a decree of nondischargeability, for the underlying action on contract arises exclusively under state law. Consequently, under the rule of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), decision on that issue is outside the jurisdictional competence of the bankruptcy court.[18] If the court had known that this issue was a significant one in this action prior to trial, it would have remitted trial and determination of this action to a state court of competent jurisdiction under the doctrine of *Matter of Naughton*, 44 B.R. 670 (Bkrtcy.W.D.Mo. 1984). But the defense was not pleaded,[19] with the result that this court proceeded to trial on the issue of dischargeability *vel non.*

---

**14.** "Defendant's sole purpose in issuing a second warranty deed was to keep his scheme alive; to hide his fraud from plaintiff a little longer." Plaintiff's brief filed October 3, 1985. But, as is noted in the text of this memorandum, there is still no clear showing that defendant had reason to believe that the letter of March 7, 1979, from the Federal Land Bank, "agreeing" to release the lien, had been rescinded before October 8, 1979.

**15.** See note 14, *supra.*

**16.** Plaintiff alleges that the defendant had no intention to obtain release of the Federal Land Bank's mortgage at the time he promised to do so in executing the agreement of December 22, 1979. But there is no direct evidence of any such absence of intention and the only relevant circumstantial evidence, again, shows that defendant negotiated for the release and that his efforts in this regard culminated in the letter of the breach of March 7, 1979, "agreeing" to release the mortgage.

**17.** If there was payment, it seems unlikely that it would have been made by any means except by check and that the cancelled check would ultimately have been returned to plaintiff.

**18.** As this court recently observed in *Matter of Richardson*, 52 B.R. 527, 533–34 (Bkrtcy.W.D. Mo.1985): "[I]t is to be remembered that, in carving out exceptions to the rule of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., supra*, Congress and the higher courts had to be circumscript in delegating powers to the bankruptcy court lest they by indirection confer Article III powers on the bankruptcy court. Accordingly, the bankruptcy court must be circumscript in interpreting the law delegating powers to it lest it be accused of arrogating Article III powers to itself ... [for] if a court does mature in such a manner, it is clear that its judges become Article III judges, without the necessity of reappointment, regardless of the character of their initial appointment."

**19.** The defendant's answer simply generally denied all the plaintiff's allegations except the allegation that a petition for relief in bankruptcy had been filed by defendant and the allegation that the contract of December 22, 1978, had been entered into.

It is therefore, for the foregoing reasons, ORDERED, ADJUDGED AND DE-CREED that the within complaint for a decree of nondischargeability be, and it is hereby, denied.