**In the Matter of Edgar Lewis
SCHWANINGER, Debtor.**

**George HERETH, Plaintiff,**

**v.**

**Edgar Lewis
SCHWANINGER, Defendant.**

**Bankruptcy No. 84–03857–SJ.
Adv. No. 85–0102–SJ.**

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Jan. 24, 1986.

**554**

John Manring, St. Joseph, Mo., for plaintiff.

Alden S. Lance, Savannah, Mo., for defendant.

Arthur B. Federman, Kansas City, Mo., Trustee.

### ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

DENNIS J. STEWART, Bankruptcy Judge.

Formerly, on December 3, 1985, this court rendered its findings of fact, conclusions of law and final decree and judgment declaring the defendant's indebtedness to plaintiff to be dischargeable in bankruptcy, 56 B.R. 50. The principal finding then made by the court was that the defendant,

in issuing a warranty deed on October 8, 1979, to plaintiff with respect to a certain 10.31 acres of real estate which was encumbered by a deed of trust held by the Federal Land Bank, did not act with a fraudulent intent; that he had some palpable reason to believe that the deed of trust had been, or would shortly be, released because of a letter dated March 7, 1979, which he had received from a responsible officer of the Federal Land Bank; and that, therefore, in light of the governing authorities requiring clear and convincing evidence of an actual fraudulent intent, the evidence in this action was insufficient to warrant the entry of a nondischargeability decree.

Plaintiff has timely [1] moved to alter or amend the judgment denying his complaint for a decree of nondischargeability. It is the principal contention in the motion that this court erred in failing to find that it was willful and malicious injury to property within the meaning of section 523(a)(6) of the Bankruptcy Code when the defendant further encumbered the property in question by granting a deed of trust to the Martell State Bank after entering into the contract to sell the 10.31 acres to the plaintiff.[2] In the now-challenged judgment issued by this court, the following considerations were stated relevant to this issue:

"(B)etween the execution of the contract for sale on December 22, 1978, and the closing thereon on October 8, 1979, the defendant gave a deed of trust to the Martell State Bank on July 6, 1979. But no affirmative misrepresentation by the

---

1. The court filed its "findings of fact, conclusions of law, and final decree denying plaintiff's complaint for a decree of nondischargeability" on December 3, 1985. Plaintiff filed his "motion to reconsider findings of fact, conclusions of law, and final decree and judgment denying plaintiff's complaint for a decree of nondischargeability" on December 13, 1985, within the ten-day period permitted by Rule 59, F.R.Civ.P., and Rule 9023 of the Rules of Bankruptcy Procedure.

2. As set out in the findings of fact in the now-challenged judgment of December 3, 1985, the following was the order in which the material events happened:

(1) December 22, 1978—the debtor agrees to issue a warranty deed for the 10.31 acres "free

of all liens and encumbrances, except easements and restrictions of record," upon the payment of $900 at the time of closing.

(2) March 7, 1979—a letter from the Federal Land Bank is sent to debtor stating an agreement to release that bank's lien upon the 10.31 acres "when the terms of the contract come due for an amount to be determined at that time."

(3) July 6, 1979—debtor gives an additional mortgage on the 10.31 acres to the Martell State Bank.

(4) October 8, 1979—the debtor pays the initial payment and the promised warranty deed is issued.

defendant is alleged in this regard, nor can be. In issuing his warranty deed to plaintiff with respect to the 10.31 acres, the defendant explicitly excepted 'restrictions of record.' A 'restriction' is generally defined to be a limitation on title which has been filed for record. 'The restrictions of record are those required to be recorded in order to serve as notice to bona fide purchasers.' *University Hills, Inc. v. Patton*, 427 F.2d 1094, 1100 (6th Cir.1970). There is no statement or showing that the deed of trust given to the Martell State Bank was not recorded as of October 8, 1979."

Accordingly, this court did not treat at length the contention based on the granting of the deed of trust to the Martell State Bank. Quite clearly, whether considered as a species of misrepresentation under section 523(a)(2) or of willful and malicious injury to property under section 523(a)(6), the additional encumbrance to the Martell State Bank was not shown by the evidence to have produced any measurable damage above and beyond that which was caused by the deed of trust issued to the Federal Land Bank.[3] There is simply no demonstration in the evidence of record that the plaintiff was required to pay any more by reason of the Martell State Bank encumbrance than he had to pay because of the preexisting encumbrance of the Federal

Land Bank. To recover under Section 523(a)(6), such proof is necessary. Thus, even though it may have been the Martell State Bank which initiated the foreclosure action,[4] its action in this regard, under the evidence which has been adduced in this action, could only result in *damnum absque injuria*,[5] for there is no showing that Martell State Bank received any of the money which plaintiff paid to purchase the property at the foreclosure sale.[6]

■ Further, even if the fact of damages were clearly demonstrated, the law governing the issue of willful and malicious injury to property is so weighted against the plaintiff as to make it all but impossible to demonstrate the willful and malicious character of the injury. As this court has pointed out on prior occasion, the decisions on this issue impose a subjective standard which requires the showing of an actual fraudulent intent.[7] No evidence of the actual thought process of the defendant has been adduced in this regard except his own statement that, when he transferred the 10.31 acres to the plaintiff, he intended only to transfer the unencumbered portion of the property.[8] From this, it is not impossible to draw an inference that defendant believed that he had somehow reserved to himself the right further to encumber the property.[9] The fact that this court

3. The Martell State Bank, as the junior lienor, would have received any of the money paid by the plaintiff at the foreclosure sale only if the price paid were sufficiently in excess of the interest of Federal Land Bank to grant the Martell State Bank some of the monies. There is no showing in the evidence that such was the case. Thus, there is no showing that the plaintiff sustained any injury by reason of the additional encumbrance to the Martell State Bank.

4. As found in the now-challenged judgment, it was in fact Martell State Bank which initiated the foreclosure action and the Federal Land Bank joined in the foreclosure action.

5. The action of the Martell State Bank, in commencing the foreclosure, may have culminated in damages, but only because of the intervention of the Federal Land Bank. As to the interest of the Martell State Bank, which was given it by the debtor, it has resulted only in "loss, hurt or harm without injury in the legal sense, that is,

without such breach of duty as is redressible by an action." Black's Law Dictionary, p. 470 (1968).

6. See note 3, *supra*.

7. See *Matter of Ireland*, 49 B.R. 269, nn. 2 and 3 (Bkrtcy.W.D.Mo.1985), quoting the governing district court decisions.

8. That the debtor may have intended to make such reservations seems supported by the language of the warranty deed. See note 2, *supra*. See note 12 of the challenged judgment, as quoted above in the text of this memorandum.

9. As is pointed out in note 8, *supra*, the language of the warranty deed itself would have been consistent with such a belief. And the district court decisions have previously held that, when the language of the governing instrument may be understood to grant the debtor the leeway which he takes, there can be no decree of non-

may, as it does, deem such a potential explanation unreasonable is not sufficient to warrant its rejection as a full, effective and availing defense to the charge of wilful and malicious conversion. For, under the governing standard, "[a] good faith belief, *even though unreasonable,* precludes a wilful and malicious intent." *Matter of Roberts,* 8 B.R. 291, 293 (W.D.Mo.1981). (Emphasis added). Accordingly, our district court has held that almost any ambiguity in the instruments governing the rights of the parties suffices to excuse a conversion from being classified as nondischargeable under § 523(a)(6).[10] And, in this action, the warranty deed itself purports to except from its warranties all "easements and restrictions of record." While no reasonable, common sense construction to that exception would seem to admit of the transferor's ability to encumber the property in the future, this court could not say, in view of the governing decisions of the district court, that the defendant's belief was not at once unreasonable and in good faith within the meaning of those decisions.

■ Nor, for the same reasons, does the later encumbrancing of the property under such circumstances point to a fraudulent intention, under the governing decisions, at the time of the giving of the warranty deed. Further, breach of contract does not constitute a ground of nondischargeability. "A mere promise to be executed in the future is not sufficient to make a debt non-dischargeable, even though there is no excuse for the subsequent breach." 1A Collier on Bankruptcy ¶ 17.16, pp. 1638–39 (14th ed. 1976).

■ This court does not exult in this state of the law,[11] but, in this case as in all others, the court can in no manner consider itself above the legal principles which it is bound to apply.[12] Accordingly, the contention that the evidence adduced with respect to the additional encumbrance to the Martell State Bank shows a nondischargeable obligation must be rejected for the separate and independent reasons that (1) no measurable damages caused by the additional encumbrance was evidenced and (2) the evidence does not demonstrate a wilful and malicious or actual fraudulent intent within the meaning of the governing decisions.

■ The plaintiff finally complains that the court should find that a $1,000 payment was made by him to defendant on or about October 8, 1979, to induce defendant's issuance of the warranty deed on the 10.31 acres in question. But this court made it clear in the opinion produced in support of the now-challenged judgment that it assumed for the purposes of this action that the payment was in fact made. The court reiterates its belief that to make the decision turn on the issue of liability *vel non* would be to arrogate Article III judicial powers to a sub-Article III court,[13] an arrogation of power which should be autho-

discharageability. See *In re Bellmer,* Civil Action No. 79–6042–CV–SJ (W.D.Mo.1980); *Matter of Ireland,* 49 B.R. 269, 271, n. 1 (Bkrtcy.W.D.Mo.1985).

10. See note 9, *supra.*

11. And see *United Bank of Southgate v. Nelson,* 35 B.R. 766, 772 (N.D.Ill.1983).

12. "The court cannot be wiser than the law." *Matter of Anderson,* 12 B.R. 483, 491 (Bkrtcy.W.D.Mo.1981).

13. If the decision turns on the existence *vel non* of the underlying liability, it is an action which arises under state law, see *Matter of Naughton,* 44 B.R. 670 (Bkrtcy.W.D.Mo.1984), which the bankruptcy court cannot determine under the rule of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). For this court to interpret the jurisdictional statutes to confer the jurisdiction and power to hear and determine such disputes upon the bankruptcy court runs the decided risk of converting an Article I court into an Article III court. "It has historically been held that the designation placed by Congress on a court as an Article III court or a non-Article III court is not controlling; the question is whether any of the federal judicial power is conferred upon the court in question ... (and) it has in the past been held that a court initially created as a non-Article III court may 'mature' into an Article III court by reason of being assigned a portion of the federal judicial power." *Matter of Richardson,* 52 B.R. 527, 534 (Bkrtcy.W.D.Mo.1985).

rized, if at all, only by the unequivocal letter of governing statutes or the decisions of higher courts.[14]

Accordingly, it is hereby

ORDERED that the plaintiff's motion to alter or amend the judgment of December 3, 1985, be, and it is hereby, denied.

---

**14.** *Matter of Richardson,* 52 B.R. 527 (Bkrtcy.W. D.Mo.1985). And see note 14, *supra.* Even, however, if the court is required to decide this issue, the evidence warrants a finding that the payment was not made. The plaintiff has not produced, and apparently cannot produce, a cancelled check. But, for the purpose of the ruling in this action, this court—to avoid the Article III issue—has nevertheless assumed that the payment was made. Plaintiff now complains that the evidence shows that no payment was relayed by defendant to the Federal Land Bank. But there is no evidence in this action which warrants the court that defendant had any payment to relay to the secured creditor.