In re Mark M. TRIPPENSEE & Marjorie P. Trippensee, Debtors.

### JEFFERSON BANK OF MISSOURI, Plaintiff,

v.

### Mark A. TRIPPENSEE & Marjorie P. Trippensee, Defendants.

**Bankruptcy No. 87–05507–C.**
**Adv. No. 88–0169–C.**

United States Bankruptcy Court,
W.D. Missouri, C.D.

June 3, 1988.

Duane Schreimann, Jefferson City, Mo., for plaintiff.

John H. Lake, Jefferson City, Mo., for defendants.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Debtors Mark M. Trippensee and Marjorie P. Trippensee filed for relief under Chapter 7 in December of 1987. Jefferson Bank of Missouri filed this adversary action on March 17, 1988, and trial was had on May 4, 1988. There is little dispute as to the facts. There is considerable dispute as to the interpretation to be placed thereon. The Bank failed to prove that Marjorie P. Trippensee had committed (or caused to be committed) any of the complained of acts. For example, the Bank failed to prove that Marjorie P. Trippensee executed or knew of the financial statement of July 15, 1985, and said fact was never admitted (nor proved) by pleading or testimony of any of the witnesses called. Since that financial statement is the linchpin of any liability on the part of debtors, the Bank made no case against Marjorie and the complaint as to her is DENIED. Hereinafter, the term debtor will apply only to Mark M. Trippensee unless otherwise specified.

The factual background, although largely undisputed, is somewhat complicated and must be briefly set out. In March of 1984, debtor and certain other individuals started an electrical contracting business. The initial startup was in the form of a partnership or joint venture and operating capital was obtained by debtor through the form of a $20,000.00 personal loan from the Bank. Later in 1984, a corporation, Superior Electrical Contractors, Inc. was formed and all further loans were made to the corporation although the Bank did require the personal guarantee of Mark M. Trippensee and Marjorie P. Trippensee which was duly executed on July 2, 1984. After that date loans of $50,000.00 on August 28, 1984, $50,000.00 on March 22, 1985, and $10,000.00 on May 24, 1985, were made to the corporation. By the summer of 1985, the Bank was not being repaid as agreed, the corporation was in difficulty and new arrangements had to be made. As a result of meetings and negotiations, the Bank cancelled all the other obligations, took a new note for $89,852.55 dated October 18, 1985, a new security agreement dated October 18, 1985, a specific list of alleged contracts and accounts receivable. The alleged balances due under these listed assets was $177,577.00 and it was allegedly

agreed between the parties that as these specified accounts were paid, the new note would be paid off. As might be expected, the Bank was not paid off, the balances received by the corporation were used to pay bills for material and labor, and this adversary action eventually resulted.

It is the Bank's position that the October 18, 1985, transactions (whether they be denominated as refinancing or new loans or whatever) would never have been entered into unless debtor had furnished a new financial statement. That financial statement (plaintiff's Exhibit 9) overstated assets, understated liabilities and was completely inaccurate. It was the Bank's testimony that the Bank relied upon said statement which was dated July 15, 1985.

■ Upon this set of facts, the Bank proposed that the debt to it be declared non-dischargeable under three sections of 11 U.S.C. § 523; i.e., § 523(a)(2)(A), § 523(a)(2)(B), and § 523(a)(4). The third of these three is the easiest to dispose of. For there to be fraud or defalcation while acting in a fiduciary capacity, the cases are legion that there must be an "express" trust and that the mere conversion of pledged accounts receivable normally does not fulfill the necessary requirements. *In re Long*, 774 F.2d 875 (8th Cir.1985).

■ The second of the three thrusts seems to form the Bank's strongest case. 11 U.S.C. § 523(a)(2)(B) refuses discharge to an individual debtor ... from any debt ... for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained, by—

(B) Use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive ...

The facts here establish that debtor owed the Bank (on the guaranty) and obtained at least an extension or renewal of the debt by use of a statement in writing (the financial statement) respecting the debtor's financial condition. As the Court has previously stated and found that financial statement was materially false in that it overstated assets and understated liabilities. Although debtor denied he delivered the financial statement to the Bank, he admits his signature and he was the only party dealing with the Bank. The Court finds that he did deliver the statement and caused it to be made. The intent to deceive can certainly be gleaned from the circumstances and there was absolutely no explanation proffered for the falsity of the statement from which anything but the requisite intent could be reasoned.

That leads finally to the question of "reasonable reliance thereon," the treacherous shoals upon which so many § 523(a)(2)(B) actions have foundered. The Bank, as always, says it relied upon it. Debtor produced no evidence to rebut the Bank's statement. The misrepresentations were not items that were easily determinable. For example: the unreported debt to debtor's mother of $25,000.00 is not something that was going to show up on any credit bureau. For example: the balances actually due on the contracts for deed on the two houses that debtors claimed to be worth $92,500.00 to them were not readily discernible. There is absolutely nothing to indicate that debtors did not hold contracts for deed on the two properties and the financial statement definitely and explicitly misstated what debtors were entitled to receive for the properties. Examination of the financial statement shows that debtors even added a page to the financial statement to emphasize they were entitled to $92,500.00 above what they owed on the properties. The Court finds that the Bank could and did reasonably rely on the financial statement.

■ The Court finds that each element of § 523(a)(2)(B) has been established. For that reason it is not necessary to consider the effect of the debtor's conduct in conjunction with § 523(a)(2)(A). The Court concludes that the debt of Mark M. Trippensee is NONDISCHARGEABLE as to

the Jefferson Bank of Missouri, if the state court determines that there is liability on the underlying debt. The Bank may pursue its state court remedies without regard to the bankruptcy proceeding. It is the function of this Court to determine the dischargeability; it is the function of the state court to determine the liability. Although this matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I), this court has the "discretion to abstain if abstention is in the interest of justice, or in the interest of comity with state courts or respect for state law". 1 Collier on Bankruptcy, ¶ 3.01 p. 3–64; 3–65 (15th Ed. 1987); 28 U.S.C. § 1334(c)(1); *Matter of Naughton*, 44 B.R. 670, 671 (Bkrtcy.W.D.Mo. 1984). In this case, it would be in the interest of justice to allow the action at bar to be decided by the state court as to liability for the underlying debt.

This Opinion constitutes Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.